231 S.C. 526 (1957)
90 S.E.2d 177
GEORGE H. MOMEIER, Plaintiff,
v.
JOHN McALISTER, Inc., a South Carolina Corporation, James A. McAlister, John McAlister and McAlister Realty Company, a South Carolina Corporation, Defendants, Ex parte ERNESTINE D. MOMEIER, individually and as executrix of the Estate of George H. Momeier, Carmelina S. Thompson and Helen Clark Wilson, Petitioners-Appellants,
v.
JOHN McALISTER, Inc., a South Carolina Corporation and McAlister Realty Company, a South Carolina Corporation, Defendants-Respondents.
17334
Supreme Court of South Carolina.
July 29, 1957.
*527 *528 Messrs. Augustine T. Smythe and Joseph H. McGee, Jr., of Charleston, for Appellants.
The order of Judge Johnson follows:
On January 2, 1943, this Court issued its injunction permanently enjoining the defendants from conducting on their premises at the corner of Smith and Wentworth Streets in the City of Charleston the business of a funeral home or any *529 type of funeral activity. This injunction was sustained by the Supreme Court of South Carolina in the case of Momeier v. John McAlister, 203 S.C. 353, 27 S.E. (2d) 504, in which decision the Court held that the Defendants were in violation of the zoning ordinance of the City of Charleston enacted in 1931. This ordinance was amended by the City of Charleston on July 10, 1956, and in pursuance of said amendment the defendants have cleared the said property in preparation to construct a funeral home. On October 24, 1956, the petitioners instituted the present proceeding, praying that the defendants be found in contempt of the 1943 injunction and stating that the July 10 ordinance was invalid in that it was enacted for private gain as distinguished from the general welfare, and that since the ordinance rezoned a small area within the restrictions of a larger area, it constituted "spot zoning." The defendants answered that no funeral activity was being engaged in on the premises in question, but that in reliance on the July 10 ordinance amendment they have employed architects, prepared plans, and commenced clearing the site for a funeral home, and alleged that it was their intent to engage in a funeral activity on this site. The defendants in their Return also joined issue with the petitioners on the question of the validity of the July 10 ordinance, contending that the action of the City Council in amending the ordinance was not arbitrary, that the ordinance was enacted in recognition of a change of conditions in the area involved, that it was enacted for the general welfare, and that its enactment was in accordance with a comprehensive zoning plan. This matter came on to be heard before me at Allendale on November 16, 1956. The arguments of both sides consumed an entire day, and I have carefully considered the entire record.
All parties concede that the defendants are not engaged in any funeral activity at the present time on the corner involved. However, the defendants express an intent in reliance upon the July 10 ordinance to engage in such activity. The petitioners raised in their Petition the issue of the validity *530 of the July 10 ordinance. The defendants joined in this issue in their Return, and Counsel at the time of the hearing expressed the desire that the validity question of the July 10 ordinance be heard on its merits. Practically the entire arguments were directed to this question, and I find that the question is properly before the Court. I, therefore, have considered the validity of the July 10 enactment, the legal authority of a municipal legislative body to amend its general zoning ordinance, and whether or not the amendment of July 10 was arbitrary and plainly unreasonable.
In 1931 the City of Charleston employed expert engineers who presented a comprehensive zoning plan for the zoning of the entire city. This plan adopted by the City Council on October 19, 1931, constituted a general zoning ordinance, and this general zoning ordinance was held valid in the Momeier v. McAlister decision of 1943. It is interesting to observe that the general zoning ordinance of 1931 contained many "spots" or small areas not conforming to the restrictions of the larger zones surrounding the "spot," but conforming to the character of such areas themselves. It is also interesting to note that Article XIII of the ordinance, or the section on "Changes and Amendments," provides that the majority of the property owners according to the frontage of a single city block can petition to amend the ordinance, and, regardless of the objection of adjacent property owners or the disapproval of the City Planning and Zoning Commission, the amendment becomes effective on the vote of three-fourths of the members of the Council. There is no provision in this article or in the entire ordinance as to the size, lot, or area that must be rezoned. It is obvious that, if less than a city block frontage of property owners can petition for an effective change, then less than a city block frontage could be effectively changed by a three-fourths vote of City Council. The variance provision of the ordinance allows one lot to be rezoned, and nowhere in the city ordinance or in the state statutes is there a minimum limitation on the size of an area that the Council must consider. The City of *531 Charleston adopted a comprehensive plan in 1931, and of course it cannot be supposed that in its adoption it was intended that no amendment to this general plan could ever be adopted and small areas rezoned, without first rezoning the entire city. There is no constitutional requirement that an entire municipality be rezoned at one time. I find, therefore, that the City Council of Charleston had the legislative power to amend its general zoning ordinance and rezone a small area, so long as its action is not arbitrary or unreasonable.
The next issue raised is whether or not the exercise of this power by the Council was hasty, ill-considered, arbitrary, or capricious. It is apparent that from the time of the original enactment in 1931 until 1956 a substantial change in property uses has taken place in the area in question. Though doctors' offices were forbidden under the 1931 ordinance in this three block area unless in the doctors' own home, it was shown that variances were granted allowing sixteen doctors' offices, some of which are individual buildings and some of which occupy ground floors of apartment homes. In 1931 there were only six businesses, whereas at the time of the amendment there were thirteen. These businesses range from an egg market to a radio station. Businesses are now located on what were then vacant lots. The Defendants' property is located on a corner of an intersection where the three other corners are now occupied by businesses. Apartment houses have taken over where individual residences formerly existed, and it appears now that only three families live in this three block area maintaining their home strictly as residences. Nevertheless, the zoning classification of "B residence" still continues over this three block area, and the marked change of uses has been brought about only through a series of variances by the Board of Adjustment.
The petitioners argued that the defendants should have applied for a variance but it is obvious that this could not be done because of the injunction. Their only relief was to petition for the ordinance to be amended. *532 They did this together with a majority of other property owners in February, 1955, and later in April, 1956. At the time of the adoption of the July 10 ordinance, no residents adjacent or opposite to the McAlister property objected to a funeral home. The only adjacent property owner, Mrs. Ernestine D. Momeier, had moved out of her adjacent property, and offered it for sale in March, 1956, prior to the defendants' petition for the zoning change. The record leaves no doubt that from the very beginning in February, 1955, the purpose of the petition was the rezoning of the McAlister tract, and this was under active consideration by the Council. The petitioners were given several hearings to voice their objections to the change, and the City Planning and Zoning Commission approved the change three times. The Council adopted the change by a three-fourths vote. The action of Council in amending the Zoning Ordinance so as to permit the classification of the lots in controversy as "Business District" cannot be said to have been hasty, ill-considered, arbitrary, or capricious, but was, in my opinion, valid action on its part, based upon its legislative finding that the area had, between the date of the adoption of the original Zoning Ordinance in 1931 and the Amendment of July 10, 1956, changed from its original character as a residential district. I find no abuse of discretion by City Council, which seems to have considered the matter over a period of more than sixteen months. The usual presumption in favor of the validity of municipal zoning ordinances is well founded here, especially in the light of the long study of the proposal by Council. The power of zoning is reserved to the legislative branch under the police power, and when exercised reasonably it will not be disturbed by the courts. The court will not arrogate unto itself this power by holding that an area of one size cannot be rezoned while an area of a greater or less size can be.
I am satisfied from the showing made that the Council, in enacting the amending ordinance, was motivated by what it conceived to be the good of the general welfare. A major consideration in large metropolitan *533 areas is the traffic problem. It is well known that the City of Charleston, approximately three miles long and a mile and a half wide, with a population in excess of seventy thousand, is one of the most congested municipal areas in the nation. The street on which the defendants now operate their funeral home, Meeting Street, is one of the main traffic arteries of the City. Parking is prohibited on one side of the street, and with the lack of room for expansion and other parking facilities, funeral services at the defendants' funeral home result in severe traffic congestion. The removal from Meeting Street of the defendants' funeral home would eliminate a major cause of traffic congestion on that street and thereby promote the convenience and welfare of the general public. It was presented at the time of public hearing before Council that the location of the funeral home on the corner of Wentworth and Smith Streets would be only two and a half blocks from the major funeral facility of the city, Stuhr's Funeral Home, and this distance would only have to be added to the established processions from Stuhr's. That Council considered these traffic and parking factors appears from the fact that the ordinance change provides special considerations for off street parking and the formation of funeral processions off the street. Perhaps some would question that these traffic considerations were sufficient to sustain an enactment in behalf of the general welfare. The issue is indisputably debatable, and the principle governs that "if the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control." Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 118, 71 L.Ed. 303, 54 A.L.R. 1016.
I do not agree with defendants' contention that the amending ordinance was enacted in accordance with the so-called Dawson Report as a comprehensive zoning plan. It is true that Mr. Dawson was selected as an engineer by the Mayor and City Engineer under authority of the Council "for the purpose of redrafting the city zoning law," and that Mr. Dawson did submit a report consisting of a proposed new *534 zoning map and a proposed new ordinance to conform with such map. However, as the Mayor pointed out himself at the meeting of July 10, 1956, "Council has not adopted the Dawson Report," and he requested that it be received as information for further study and action. Even as late as the date of the hearing herein, November 16, no approval of the comprehensive Dawson Plan by City Council had been had, and such plan can be rejected at any meeting of that body. So far, the only action which purports to have been taken under that Report is the rezoning of the property in question. In my view of the matter, the action of the Council can only be, and should be upheld as a valid exercise of its power to amend the 1931 general ordinance by reason of changed conditions and for the good of the general welfare.
It is therefore ordered:
(1) That the Rule citing the defendants for contempt be, and is hereby discharged; and
(2) That the ordinance of 1931, upon which the injunction of Judge E.H. Henderson of January, 1943, was based, has been legally amended so as to allow a funeral home on the defendants' property at the corner of Wentworth and Smith Streets in the City of Charleston, and the use of the property in question in accordance with the amended ordinance will not constitute a violation of the injunction.
And it is so ordered.
July 29, 1957.
PER CURIAM.
The Order of the lower Court has been carefully considered in the light of the record and the Exceptions. The issues presented by the Exceptions were correctly decided by the lower Court. The Exceptions are overruled and the Order of the lower Court is adopted as the judgment of this Court.
Let it be reported.